**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**HAVANA MARIA WADE**                                                **PLAINTIFF**

**V.**                                                **CIVIL CAUSE NO. 1:21-CV-98-DAS**

**LEE COUNTY, MISSISSIPPI**                                                **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the court on Lee County, Mississippi's Motion for Summary Judgment. Because the parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion. After reviewing the parties' submissions, the record, and the applicable law, the court is prepared to rule.

### Factual and Procedural Background

The plaintiff filed her original Complaint on June 15, 2021, and her Amended Complaint on October 5, 2021. She asserts claims against the defendant Lee County, Mississippi, ("defendant") for unconstitutional conditions of confinement, unreasonable detainment, and arrest and confinement without probable cause. The events giving rise to the plaintiff's claims are as follows:

The plaintiff applied for employment at AbilityWorks/Mississippi Department of Rehabilitation Services but was denied based on information discovered in a criminal background check. On July 31, 2020, the plaintiff went to the Lee County Sheriff's Department seeking a criminal background check in order to determine what appeared on her record. After waiting for the report, she was informed there was a warrant for her arrest, and she was taken into custody.

1

Patrol Deputy Chris Donald testified that he was working at the Lee County Sheriff's Department at the time. He stated he "ran her driver's license through our dispatch, and our dispatch confirmed that she had a warrant. It wasn't until [one of our dispatchers] brought me the paperwork of the warrant before I placed [the plaintiff] in handcuffs and walked her to the back." Deputy Donald testified that he had been trained to wait until receiving the hard copy of the warrant from a dispatcher before arresting an individual and that without a hard copy, an individual was released. The Inmate Release Report issued by the Lee County Sheriff's Department shows the plaintiff was booked on July 31, 2020, at 1:16 p.m.

The warrant on which the plaintiff was arrested was signed by Judge Rickey Thompson and dated September 20, 2010. It reflects a charge for possession of controlled substance. The warrant was supported by a Justice Affidavit signed by Robert Harper and dated that same day. According to the plaintiff, she "knew nothing about a 2010 warrant for [her] arrest until she was arrested on July 31, 2020."

The plaintiff testified that upon arrest, she "was not screened by deputies in accordance with CDC recommended questions regarding COVID-19 and was not provided any protective face mask or any hand sanitizer." Instead, she was instructed to dispose of the face mask she was wearing and was placed in a holding cell with twelve or thirteen other female detainees. Her Amended Complaint alleges there was no privacy to use the restroom in the holding cell and no shower available. During her deposition, the plaintiff described the lack of bedding available and stated that she and other detainees were forced either to sleep on the bare floor or iron benches or sitting up because not enough mats were provided. The plaintiff testified that while detained she received her prescribed medications with the exception of Xanax. She also claims to have witnessed two incidents of threatened violence that caused her "continuous fear."

2

The plaintiff testified that on Monday, August 3, 2020, a narcotics officer visited her in the jail and told her there was no reason for her to be detained. Officer Kavin Warren of the North Mississippi Narcotics Unit testified he was advised by a supervisor to obtain a bond for the plaintiff. He stated he did not know anything about the underlying charge and described calling Justice Court Judge Chuck Hopkins to set bond. The plaintiff was released on the evening of August 3, 2020, at 5:31 p.m.

Agent Robert Harper, the narcotics officer who signed the affidavit on September 20, 2010, in support of the arrest warrant, testified he did not ultimately "present the [plaintiff's] case to the grand jury because the amount of drugs that she had didn't meet the threshold to be a felony amount." However, he did not recall when that determination was made. He stated he "contact[ed] the judge at the justice court and told her [he] just wanted to dismiss the case…" The charge was dismissed on August 10, 2020.

The plaintiff seeks to recover damages for these allegedly unconstitutional conditions of confinement as well as to compensate her for the time she was confined in the Lee County Jail.

*Legal Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

*Analysis and Discussion*

I.    Conditions of Confinement

The plaintiff's Amended Complaint raises several challenges to the constitutionality of her confinement including: (a) her fear of contracting COVID-19 while confined without a mask in the immediate vicinity of other detainees; (b) the lack of bedding provided overnight; (c) the lack of a private restroom or shower; (d) inadequate medical care; (e) the threat of violence; and (f) overcrowded conditions.

Challenges to the constitutionality of conditions of pre-trial confinement are evaluated under the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Constitutional challenges brought by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644-45 (5th Cir. 1996)).

4

The Fifth Circuit applies the reasonable relationship test set forth in *Bell v. Wolfish,* 441 U.S. 520 (1979), when evaluating a pretrial detainee's challenges to "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare,* 74 F.3d at 643. Under this test, "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Id*. at 640. To decide whether a pretrial detainee's constitutional rights have been violated, the court must determine whether the "disability is imposed for punishment or ... [for] some other legitimate governmental purpose." *Bell,* 441 U.S. at 539. However, "the Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees." *Collins v. Ainsworth,* 382 F.3d 529, 540 (5th Cir.2004) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)); *see also Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.1989) (holding that the Constitution does not protect against conditions of confinement "which cause mere discomfort or inconvenience").

When a pretrial detainee challenges a jail official's "episodic acts or omissions, the *Bell* test is inapplicable, and hence the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Hare,* 74 F.3d at 643 (adopting a standard of subjective deliberate indifference as the measure of culpability for pretrial detainees' claims of episodic acts or omissions). Thus, "liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id*. at 650.

The plaintiff's claims, with the exception of the alleged threats of violence, are based on a conditions of confinement theory. Her claim regarding threats of violence can be classified as challenging a particular act or omission. The court will evaluate each claim in turn.

a. COVID-19[1]

The plaintiff's Amended Complaint alleges she "was confined without a mask and without protection from COVID-19, in the immediate vicinity of multiple other persons. No means of protection were taken to protect [her] from the other prisoners and no tests were conducted to determine whether the other persons were inflicted with COVID-19."[2] She claims to have suffered constant fear as result thereof. *Id*.

In response to the plaintiff's interrogatory requesting "any and all steps you took to protect persons in the holding cell from COVID-19," the defendant wrote:

> The measures taken by the Lee County Detention Center to provide protection to its employees and inmates during the COVID-19 pandemic have changed numerous times, as they have worldwide. However, based upon information and belief, in July 2020, Lee County would have screened all inmates with CDC recommended questions (regarding fever, exposure, travel, etc.), checked temperature, and if possible, provided disposable masks and hand sanitizer. For general sanitation purposes, the holding cell in which Plaintiff was detained is cleaned daily and is pressure washed every Saturday.

However, the plaintiff testified she "was not screened by deputies in accordance with CDC recommended questions regarding COVID-19 and was not provided any protective face mask or any hand sanitizer" when she was arrested. She testified that on intake she was instructed to remove her mask but admits she never tested positive for COVID.

Under the Fourteenth Amendment, penal officials have a duty to provide a pretrial detainee in their custody "with basic human needs, including ... protection from harm, during their confinement." *Hare*, 74 F.3d at 650. To establish a failure-to-protect claim under § 1983,

---

[1] While this is alleged as a condition of confinement claim, the alleged failure to implement COVID-19 precautions is evaluated under a failure-to-protect analysis, and the applicable legal standard is set forth herein.

[2] As an initial matter, it is relevant that the plaintiff was detained in late July, early August 2020. As of that time, "the pandemic was still in its early stages in this country and information about–and supplies to detect and combat– COVID-19 were limited." *Snyder v. Bergeron*, 2021 WL 784813, at *3 (E.D. La. Jan. 21, 2021).

the plaintiff must show that she was detained under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to her need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). However, that, in and of itself, does not suffice. Not only must the harm in question be serious, but also the risk of that harm must be substantial.

The second element, "deliberate indifference," is typically more problematic for plaintiffs. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.

*Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020). Specifically regarding COVID-19, the Fifth Circuit held:

> In evaluating a prison's response [to the pandemic], deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm. It requires a showing of a wanton disregard for the prisoners' safety or recklessness. Our inquiry thus centers on whether prison officials recklessly disregarded the risk of COVID-19.

*Valentine*, 993 F.3d at 281-82.

> As discussed in *Queen v. Medical Staff of Terrebonne Parish Consolidated Government*:

> [T]he undersigned agrees with plaintiff that it would have been preferable for COVID tests to have been administered to all incoming inmates and for social-distancing to have been practiced. In addition, the undersigned also in no way means to discount how frightening it was for plaintiff to be housed in close quarters with untested strangers while the pandemic was raging in the community. Nevertheless, those simply are not the measures to be used to determine whether there was deliberate indifference, as is required to support a § 1983 claim.

*Queen v. Med. Staff of Terrebonne Par. Consol. Gov't*, 2022 WL 1498188, at *4 (E.D. La. Feb. 22, 2022).

In *Queen*, the plaintiff complained the prison did not implement adequate social-distancing measures and did not test detainees. *Queen*, 2022 WL 1498188, at *4. The court found "the CDC guidelines for detention facilities did not require or recommend mass testing" and was "not persuaded that the constitution requires more." *Id*. at *5 (quoting *Valentine*, 993 F.3d at 286). As for the lack of social-distancing measures, the *Queen* court found "the mere fact that [social distancing] was not achieved is an insufficient basis for finding a constitutional violation." *Id*. (quoting *Snyder v. Bergeron*, 2021 WL 2822376, at *8 (E.D. La. July 7, 2021)).

With respect to the use of face masks, the defendant's alleged failure to require their use or provide them to pretrial detainees in July/August of 2020 is insufficient to establish a constitutional violation. Again, the District Court for the Eastern District of Louisiana held the failure to provide personal protective equipment, *i.e.*, face masks, to inmates in June of 2020 did not amount to a failure to protect under § 1983:

> That prison officials did not require face masks for the first few months of the pandemic does not establish deliberate indifference. What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities. At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus. Of course, we now know that such masks do help reduce the risk of transmission. But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.

*Snyder v. Bergeron*, 2021 WL 784813, at *4 (quoting *Kesling v. Tewalt*, 2020 WL 4496495, at *6 (D. Idaho Aug. 4, 2020)).[3]

---

[3] *See also Mayfield v. Peissig*, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) ("[P]laintiff's general allegations about a lack of social distancing and inconsistent mask use at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety.").

Here, there is no evidence that the alleged failure to provide masks, administer COVID-19 testing, or implement social distancing measures placed the plaintiff at substantial risk of contracting COVID-19.[4] Further, the plaintiff has not offered any evidence that the defendant was deliberately indifferent to her health and safety in light of the information and resources available at the time of her detention. As such, there is no basis for the plaintiff's failure-to-protect claim.

Additionally, the defendant argues the plaintiff's claim related to her *fear* of contracting COVID-19 is insufficient to state a claim under § 1983 and should be dismissed as a matter of law. *See United States v. Koons*, 455 F.Supp.3d 285, 292 (W.D. La. 2020) (explaining that general concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds for any type of redress). The court agrees that simply the fear of contracting an illness is insufficient to state a claim, and thus, summary judgment is appropriate.[5]

b. Bedding

Next, the plaintiff alleges she was not provided any bed or cot for sleeping while detained at the Lee County Jail. Her Amended Complaint provides "[a] few cots were brought to the Lee County Jail during the night, but not enough for all of the women being held in the closely-confined holding cell in which [she] was held." The plaintiff testified that four or five mats were provided for the holding cell housing twelve or thirteen women, requiring detainees either to sleep sitting up, on the bare floor, or an iron slab. The plaintiff contends "[t]hese conditions did

---

[4] The plaintiff does not allege to have contracted COVID-19 as a result of her detention but rather testified that she never tested positive. Regarding a pretrial detainee's complaints that he was never tested for COVID-19 during his detention, the court in *Bodnar v. Lake County Jail* concluded "[t]he failure of the defendants to offer [the plaintiff] a test for COVID-19 when he is asymptomatic in no way implicates the Constitution." *Bodnar v. Lake Cnty. Jail*, 2020 WL 1940742, at *3 (S.D. Ind. Apr. 22, 2020).

[5] To the extent the plaintiff argues this condition cannot be judged singularly but must be considered in combination with the totality of conditions alleged to determine whether a constitutional violation occurred, see *infra* section "g. totality of conditions."

not meet minimal standards of human decency" and "were not reasonably related to any governmental purpose."

Relying on *Collins v. Ainsworth,* the defendant responds the plaintiff has not made a sufficient showing of unconstitutional conditions arguing "[t]he lack of some type of bedding on the floors is not a *per se* constitutional violation of a pretrial detainees rights." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004)).[6] The defendant further argues the plaintiff has failed to put forth evidence that the conditions alleged are sufficiently extended or pervasive.[7] Noticeably absent from the defendant's argument is any evidence of a "legitimate governmental purpose" for not providing the plaintiff with bedding. This omission precludes summary judgment on the plaintiff's claim for lack of bedding.

In *Martinez v. Harris County Jail*, a pretrial detainee complained that he was denied a mattress. *Martinez v. Harris County Jail*, 71 F.3d 876, 1995 WL 725414 (5th Cir. 1995). The district court determined this condition was a single isolated incident and thus did not amount to

---

[6] The cases cited by the defendant in support of summary judgment, including *Collins v. Ainsworth*, are all factually or legally distinguishable. In *Collins*, for instance, the plaintiff was without a mattress for less than twenty-four hours. Here, the plaintiff was detained for seventy-six hours. In *Owens v. Lee County, MS,* the plaintiff was provided a pad. *Owens v. Lee County, MS,* 2010 WL 2771846 at *3 (N.D. Miss. July 13, 2010). In *Hubbard v. Taylor,* the plaintiff had a mattress. *Hubbard v. Taylor,* 538 F.3d 229 (3d Cir. 2008). The defendant has also cited cases employing the "deliberate indifference" standard utilized for violations of pretrial detainees' constitutional rights characterized as an episodic act or omission. *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Because the plaintiff's claims here are conditions of confinement claims, the standard utilized for an episodic act or omission is inapplicable.

[7] Whether the conditions are "sufficiently extended or pervasive" is only relevant when the "pretrial detainee is unable to point to such an established rule or restriction" to "demonstrate the existence of an identifiable intended condition or practice." *Hare*, 74 F.3d at 645. The Fifth Circuit explains the distinction as follows:

> If a pretrial detainee is unable to point to such an established rule or restriction, then he must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice to which the *Bell* test can be meaningfully applied.

*Id.* at 645. Here, because the plaintiff is attempting to prove the existence of an established restriction, *i.e*, the lack of bedding, her claim does not require evidence that the condition alleged is sufficiently extended or pervasive. *See e.g.*, *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) ("A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc.").

a constitutional violation. *Id*. at *3. However, in framing the issue, the Fifth Circuit clarified that "the proper inquiry is whether or not the Harris County Jail imposed these conditions to punish Martinez" and found the record devoid of any indication as to why prison officials denied Martinez a mattress and showers. *Id*. The Fifth Circuit concluded "[t]hese deprivations could arguably constitute unconstitutional punishment of a pretrial detainee" and remanded the case for further proceedings. *Id*.

Again, in *Hebert v. Maxwell*, the Fifth Circuit found issues of fact remained as to whether the deprivation of sleeping accommodations was "related to a legitimate, non-punitive governmental objective." *Hebert v. Maxwell*, 214 F. App'x 451, 455 (5th Cir. 2007) (quoting *Hare*, 74 F.3d at 644). Although reviewing qualified immunity under 42 U.S.C. § 1983, the Fifth Circuit evaluated the plaintiff's claim as challenging the conditions of confinement and held that "housing a detainee in a room without sleeping accommodations, when other available rooms had sleeping facilities, is enough to survive a summary judgment motion…." *Id*. at 456.

The issue of the constitutional right to bedding was thoroughly discussed by the District Court for the Eastern District of Texas in *Unger v. Taylor*, 2008 WL 11422152, at *1 (E.D. Tex. Feb. 1, 2008). There, the plaintiff claimed he was denied available bedding that other detainees were provided as a form of punishment. *Id*. at *5-6, fn. 8. The court cited *Herbert* and *Martinez* noting the Fifth Circuit's findings that "a pretrial detainee who is denied bedding in the absence of a legitimate governmental objective *may* have a Fourteenth Amendment claim for unconstitutional punishment of a pretrial detainee." *Id*. at *6 (emphasis added). Consistent with these earlier decisions, the *Unger* court found there was a factual dispute as to whether the plaintiff was given bedding, and this disputed allegation "[rose] above the *de minimis* level of imposition with which the Constitution is concerned." *Id*. Accordingly, the plaintiff's allegations

11

regarding the denial of bedding, may—absent evidence of a legitimate and non-punitive reason—provide a constitutional violation. *Id*. at *6, *8.

As in *Martinez*, the defendant has not provided any reason for *why* it did not provide the plaintiff with any type of bedding for sleeping. *Martinez*, 71 F.3d 876, 1995 WL 725414. Like in *Hebert* and *Unger*, the defendant provided sleeping accommodations to other detainees but not the plaintiff. *Hebert*, 214 F. App'x at 456; *Unger v. Taylor*, 2008 WL 11422152. Consequently, absent a "legitimate, non-punitive government objective" for this discrepancy, the plaintiff's claim as to this condition of confinement must proceed beyond summary judgment.

c.   Privacy

The plaintiff's Amended Complaint alleges "there is no privacy to use a restroom. The device that was utilized as the commode was also the same device from which any water had to be drawn." She also claims, "there was no shower or any other reasonable means to clean one's body."

The defendant explains that the layout of the holding cell where the plaintiff was detained "is intended to prevent embarrassment or indignity while also allowing visual checks of the holding cell areas for the safety of the detainees." Because security is a concern in the holding cell, the defendant explains "visual monitoring of all areas of the holding cell is necessary to maintain the safety of the pretrial detainees." Jail administrator Captain Ronnie Partlow testified that each morning detainees were offered use of partitioned showers with doors located in an area separate from the holding cell where the plaintiff was detained. The plaintiff's response does not specifically address her claim as to the lack of privacy.

The plaintiff has failed to show that such conditions amount to punishment and are not reasonably related to a legitimate governmental purpose. The record reflects that the design and

12

layout of the facilities within the holding cell are intended to enhance jail safety and security interests that outweigh the plaintiff's minimal privacy rights in jail. *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) ("Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration."). Further, Captain Ronnie Partlow's uncontested testimony establishes that the layout of the holding cell is reasonably related to this legitimate, non-punitive government objective of maintaining the safety and security of detainees. *See Kimble v. Par. of Jefferson*, No. CV 21-409, 2022 WL 2183304, at *13 (E.D. La. May 31, 2022) (the lack of privacy allowing guards to view inmates as they enter and exit the toilet and shower areas was not a constitutional violation).

Even ignoring Captain Partlow's testimony that detainees were offered the daily use of partitioned showers with doors, the plaintiff's claim regarding the total lack of showers does not amount to a constitutional violation. The Fifth Circuit Court of Appeals declined to find unconstitutional punishment where a pretrial detainee was denied showers as well as telephone access, recreation, mail, and sheets for a three-day period in *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996); s*ee also Carter v. Strain*, 2009 WL 3231826, at *2 (E.D.La. Oct. 1, 2009) (pretrial detainee's complaint that he was allowed only one shower during eight-day period was merely a brief deprivation which would not violate the Constitution); *Hernandez v. City of Farmers Branch*, 2002 WL 66162, at *4 (N.D. Tex. Jan. 10, 2002) (finding the denial of "hygiene items and showers" for six days was "insufficient to state a claim of constitutional dimension[ ]").

Accordingly, the court finds the plaintiff has not demonstrated that her complaints regarding the lack of privacy concern anything more than *de minimis* inconveniences which do not implicate her constitutional rights and do not warrant relief.

13

d. Medication

There is no dispute that when the plaintiff was arrested and had a prescription for Xanax. The plaintiff's Amended Complaint alleges that "[b]ecause of lack of training, no officers gave Plaintiff her prescribed medication. Plaintiff's family had brought the medication to the jail, but it was never given to her." The plaintiff contends "[t]he decision as to whether a detainee receives their prescribed medication was an obvious custom or policy by the sheriff, since it had always been done that way for the many years Dr. David Brooks acted under [Sheriff Jim] Johnson as the Lee County Jail physician." The plaintiff seeks to hold the defendant liable for the sheriff's "policy of taking away medication for detainees if the medication is a controlled substance, without any consideration of the circumstances." Alternatively, the plaintiff contends this policy shows that the deputies charged with plaintiff's care were "essentially unsupervised," warranting the defendant's liability. The defendant argues this claim fails as a matter of law because, as a preliminary matter, the plaintiff has failed to show the alleged withholding caused any injury.

The plaintiff's claim regarding the administration of her medication implicates the jail's system of providing medication to inmates when they are prescribed controlled substances and is thus evaluated under a conditions of confinement analysis. *See Shepherd v. Dallas Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009) (holding that a claim regarding the jail's system of providing medical care to inmates with chronic illness was an attack on conditions of confinement rather than episodic acts or omissions of particular jail officials). The parties do not dispute that it is the jail's policy to discontinue prescribed medications that are controlled substances when an inmate is booked at the Lee County Jail. According to Dr. David Brooks' undisputed testimony, controlled substances may be administered if an inmate is demonstrating "extreme agitation" or "evidence of impending alcohol [or drug] withdrawal." There is no evidence establishing that the policy of withholding controlled

14

substances is imposed for punishment. Rather, "the effective management of the detention facility ... is a valid objective that may justify imposition of conditions and restrictions of pretrial detention." *Id.* at 543 (quoting *Bell*, 441 at 540). Here, this valid objective justifies the withholding of medications under the limited circumstances described and that the plaintiff suffered no injury supports that finding.

e. Violence

The Amended Complaint alleges:

There was a constant threat of violence and violence in the area. Plaintiff observed (2) incidents causing her great fright, with one person apparently being beaten, and a second person who was screaming, being removed, and placed into another room. The loud noises and constant threat of violence caused Plaintiff continuous fear.

The plaintiff maintains she suffered from "constant fear of physical violence because of witnessing incidents of violence against other inmates in the holding cell." One of the incidents referenced in her Amended Complaint involved an inmate who was removed from the holding cell after being strapped to a chair. The plaintiff testified although she could not see the inmate, she "could hear her screaming and hollering" and "begging for them to stop." According to the plaintiff, when the inmate returned, she was "red looking and bloody" from presumably having been "tortured." The second incident involved another detainee–a nurse in uniform–who the plaintiff observed being tased in the holding area, and it appeared to the plaintiff that her hand had been broken. The plaintiff testified that she suffered no physical abuse while detained.

It is well-established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer,* 511 U.S. at 832-33. Under *Farmer,* an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety. *Id.* at 834. The plaintiff has adduced no evidence that she was detained under conditions posing a

substantial risk of serious harm. Alternatively, even if analyzed as a condition of confinement, there is no evidence that actual threats of violence were inflicted on the plaintiff as a form of punishment during her detention. Rather, she testified that she suffered no physical abuse while detained. As argued by the defendant, the plaintiff's claim that she suffered constant *fear* of physical violence is merely a "bystander" claim that is not actionable under § 1983.

In *Grandstaff v. City of Borger, Texas*, the City of Borger, Texas police mistook the plaintiff for a fugitive and killed him. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985). The Fifth Circuit Court of Appeals found that the decedent's widow and stepsons could not recover damages under § 1983 for negligent infliction of emotional distress because "[s]ection 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Id*. at 172 (citing *Baker v. McCollan,* 443 U.S. 137, 146 (1979)). Whether classified as an episodic act or omission, a condition of confinement, a "bystander" claim, or a claim for infliction of emotional distress, the plaintiff's claim regarding threats of violence fails as a matter of law.

f.   Overcrowding

Next, the plaintiff alleges "[t]he holding cell was unconstitutionally overcrowded," and she testified that twelve or thirteen women were detained in the holding cell with her. According to the defendant, the holding cell measures 18' by 22'.

"Overcrowding of persons in custody is not *per se* unconstitutional." *Collins,* 382 F.3d at 540 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347-50 (1981)). Rather, the Constitution only prohibits the "imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" *Id*. The plaintiff has made no such showing here.

16

In *Collins*, there was evidence that the jail exceeded capacity; however, the Fifth Circuit Court of Appeals held there was "nothing to indicate that unsanitary or unsuitable conditions amounting to punishment resulted." *Id*. at 545. Here, the plaintiff has not advanced summary judgment evidence establishing that the holding cell was in fact overcrowded. Captain Partlow, the Lee County jail administrator, testified that twelve or thirteen women was a typical number of detainees for a weekend. While Captain Partlow opined that the space at the jail was inadequate, he testified that the holding area where the plaintiff was detained is "not designed to hold 20 or 30 people" but could accommodate "fifteen, twenty because everybody ain't sitting on top of each other." In fact, Captain Partlow testified that "[b]ecause of COVID we were trying to get people out of the jail and keep the numbers down" when explaining the procedure for releasing non-violent offenders on their own recognizance.

There is simply no evidence that the holding cell where the plaintiff was detained was overcrowded, much less that the alleged condition amounted to punishment and was not reasonably related to a legitimate governmental purpose. While this court has determined that the plaintiff has stated a constitutional violation related to the lack of bedding, the plaintiff does not suggest nor is there any evidence that the two conditions are related.

g. Totality of conditions

In her response to the defendant's motion for summary judgment, the plaintiff contends the defendant considered each of the alleged conditions separately, rather than the totality of the conditions at Lee County jail in evaluating whether her Constitutional rights were violated. She asserts that the "multiple inhumane conditions" included:

> severe overcrowding, disregard of Wade's mental history and vulnerable physical condition, intentionally taking away her protective face mask during the raging COVID-19 pandemic, failing to provide Wade any place to sleep, with the only

17

sleeping options as being on the floor or on a concrete bench, and the constant fear of violence indicated by the strapping down and tasing of other inmates.

The plaintiff argues "it is inappropriate to single out a particular act of neglect and claim that that particular act of neglect is not unconstitutional." She argues it is sufficient to show a series of "acts or omissions…sufficiently extended or pervasive…to prove an intended condition…" *Id.* (citing *Hare*, 74 F.3d at 645).

Even considering the "totality of the conditions," the failure to provide bedding remains the only condition rising to the level of a constitutional violation. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990) (applying a "totality of the conditions" test in evaluating claims concerning conditions of confinement). With respect to the remaining conditions, the plaintiff has not identified any "basic human need[s]" which she was denied for an unreasonable period of time. *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Further, the plaintiff has claimed no harm from the conditions alleged. Accordingly, her conditions of confinement claims, with the exception of the defendant's failure to provide bedding, will be dismissed.

II.     Arrest and Confinement Without Probable Cause

In her Amended Complaint, the plaintiff contends it is an official policy of Lee County *not* to train its deputies to make a reasonable investigation when confronted with a ten-year-old warrant. While it is unclear from the Amended Complaint whether the plaintiff is alleging a policy or a failure to train, her response to the motion for summary judgment does not address failure to train.[8] Consequently, the court addresses the issue as a claim that the county has a

---

[8] While a municipality can be held liable under § 1983 for constitutional violations caused by its employees under a failure-to-train theory, the plaintiff's Amended Complaint as well as her response to summary judgment does not make the requisite showing that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir.2005).

policy that its employees need not re-investigate ten-year-old arrest warrants to determine whether they are still valid. The defendant's motion for summary judgment and reply brief focus largely on the validity of the ten-year-old arrest warrant at issue. The defendant argues "there is no genuine issue of material fact on whether Deputy Donald had probable cause to arrest plaintiff when there was indisputably a valid outstanding felony warrant for her arrest."

Looking at the matter, it certainly can be argued that Deputy Donald acted pursuant to a facially valid warrant.[9] However, the plaintiff has not sued Deputy Donald, and thus, the court looks to see whether there is any policy of Lee County rather than the specific actions of either Deputy Donald or Agent Harper or any other Lee County employees. As the parties are well-aware, a county is not liable under § 1983 on the theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Rather, a county is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). To establish liability, the plaintiff must identify "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

On the evidentiary record before the court, there is no genuine dispute that on September 20, 2010, Agent Harper signed an affidavit in support of the charges for felony possession of a controlled substance. Subsequently–although precisely when is unclear–Agent Harper learned of the crime lab analysis indicating that the amount of drugs did not meet the threshold amount to

---

[9] The cases cited by the defendant in its reply brief speak directly to this point. *See e.g.*, *Anderson v. Reynolds*, 476 F.2d 665 (10th Cir. 1973) (holding an arrest warrant, issued by a judicial officer upon the sworn complaint prepared by the county attorney's office, could not be the basis for civil rights liability against the enforcement officers who executed it); *Neuman v. Peoria Cnty. Police Dep't*, 187 F. App'x 627, 630 (7th Cir. 2006) (holding officers were bound by statue to execute a warrant for the plaintiff's arrest).

constitute a felony, but he did not withdraw the warrant. Specifically, Agent Harper testified that he "didn't go further with the case." There is no dispute that based on Agent Harper's affidavit, Judge Rickey Thompson issued a felony warrant for the plaintiff's arrest on September 20, 2010. It is also clear that Deputy Donald arrested the plaintiff only after "our dispatch confirmed that she had a warrant" and he received "the paperwork of the warrant." Finally, it is not disputed that the felony charge was dismissed on August 10, 2020, after the plaintiff was arrested, detained, and released from the Lee County Jail.

The court, therefore, looks to these facts to determine whether a policy exists that deputies are not to make a reasonable investigation into the validity of a ten-year-old warrant. After considering the matter, the court finds nothing to suggest such a policy exists. To allege a policy to serve invalid warrants would be one thing, but that is not alleged. Here, the plaintiff alleges a policy to serve a warrant without first re-investigating its basis, and the court will not place that burden on the county. *See Safar v.* Tingle, 859 F.3d 241, 247 (4th Cir. 2017) (holding "courts should not lightly enter the business of micromanaging police investigations and impose a categorical duty on officers governing the termination of allegedly stale arrest warrants").

While the plaintiff argues the agent who becomes aware of evidence that invalidates a warrant should take steps to rescind it, that reasoning perhaps would apply to a claim against an agent individually but not the public entity itself. It appears at best she is alleging a policy to ignore evidence that warrants are invalid, but there is nothing before the court to support such a claim. Again, the court is not going to place a burden on the county to re-investigate every warrant, and the only instance before the court in which an agent has found evidence that might render a warrant invalid and done nothing to rescind that warrant is this one specific event that happened over ten years ago.

Put another way, there is no dispute over what occurred. The dispute is a legal one–
whether the actions of Agent Harper and Deputy Donald provide evidence that a policy exists in
Lee County to ignore invalid warrants, and the court finds the actions of Agent Harper and
Deputy Donald alone do not make such a showing. Consequently, summary judgment is
appropriate as to this claim. *See Piotrowski*, 237 F.3d at 578 ("isolated unconstitutional actions
by municipal employees almost never trigger liability"); *Williams v. Blaisdell*, 173 F. Supp. 2d
574, 582-83 (N.D. Tex. 2001) (granting summary judgment when plaintiff relied on single
event).

III.     Unreasonable Detainment

Next, the plaintiff contends the defendant violated the Fourth and Fourteenth
Amendments to the United States Constitution, Section 23 of the Mississippi Constitution, the
Mississippi Rules of Criminal Procedure, and Mississippi statutes when it failed to take the
plaintiff "immediately" before a judge or, alternatively, "without unreasonable delay." The
plaintiff was booked into the Lee County Jail on July 31, 2020, at 1:16 p.m. She was released on
August 3, 2020, at 5:31 p.m. The issue before the court is whether the failure to provide a bail
hearing for approximately seventy-six hours[10] violated the plaintiff's rights.

a.   Federal Violations

The plaintiff alleges she has a constitutional right "to be taken immediately before a
judge, or, alternatively, be taken without unreasonable delay." She asserts that Mississippi law
creates "a liberty interest in being immediately released from confinement or be taken before a
judge to be heard on whether she should be released and have counsel appointed," and contends

---

[10] The plaintiff calculates the time period as approximately sixty-five hours; however, seventy-six hours elapsed
between July 31, 2020, at 1:16 p.m. and August 3, 2020, at 5:31 p.m.

the failure to do so in this case "violated her rights under the Fourth and Fourteenth Amendments" by denying her freedom without due process.

In support of summary judgment, the defendant maintains probable cause was established prior to the plaintiff's arrest and detainment, and thus, her constitutional rights were not violated by the defendant's failure to take her before a judge within 48 hours. However, the defendant fails to address the plaintiff's claims adequately under either a Fourth or Fourteenth Amendment analysis thus precluding summary judgment as to these alleged violations.

The defendant's initial argument invokes the Fourth Amendment considerations articulated in *County. of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991). *McLaughlin* discussed bail hearings in the context of "incorporating probable cause determinations 'into the procedure for setting bail or fixing other conditions of pretrial release.'" *McLaughlin*, 500 U.S. at 54. In this event, when pretrial proceedings are consolidated, *McLaughlin* held they must occur "as soon as reasonably feasible, but in no event later than 48 hours after arrest." *Id*. at 57. If the determination of probable cause is delayed by more than 48 hours the burden shifts to the government, and its showing of reasonableness will, virtually by definition, demand "a bona fide emergency or other extraordinary circumstance." *Id*. "The fact that a particular case may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance… nor, for that matter, [does] intervening weekends." *Id*.

Here, the plaintiff was detained for seventy-six hours without a bail hearing and the defendant does not attempt to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" which would justify this significant delay under a Fourth Amendment analysis. *McLaughlin*, 500 U.S. at 57. Rather, the defendant states in conclusory fashion that because a valid warrant established probable cause, the plaintiff's detention

22

exceeding 48 hours did not amount to a constitutional violation. Further, without citing supporting precedent, the defendant maintains it was the North Mississippi Narcotics Agency's obligation–not Lee County's–to determine the status of the plaintiff's case, contact a judge, and set bond.

With respect to the alleged due process violation under the Fourteenth Amendment, the defendant's argument centers on the on the plaintiff's reliance on *ODonnell v. Harris County, Texas*, 892 F.3d 147, 160 (5th Cir. 2018), for the proposition that bail hearings must be set within the 48-hour timeframe. As a preliminary matter, Fourteenth Amendment procedural due process claims require a two-step inquiry: "[t]he first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). Liberty interests protected by the due process clause can arise from two sources, "the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

In Mississippi, "[b]ail is a fundamental, constitutionally protected right." Mississippi Constitution Article 3, section 29 (1890). *Resolute Ins. Co. v. State*, 233 So. 2d 788, 789 (Miss. 1970). Further, it is "the liberal policy of [Mississippi's] Constitution and laws, to allow . . . application for bail." *Wooton v. Bethea*, 209 Miss. 374, 379, 47 So. 2d 158, 161 (1950). The Supreme Court of Mississippi has also expressly concluded that bail in Mississippi is liberty interest. *Lee v. Lawson*, 375 So. 2d 1019, 1023 (Miss. 1979) ("A consideration of the equal protection and due process rights of indigent pretrial detainees leads us to the inescapable conclusion that a bail system based on monetary bail alone would be unconstitutional").[11]

---

[11] The bond is allowed to be given for the convenience of a person not yet proved to be guilty. *Resolute Ins. Co. v. State*, 233 So. 2d 788, 790 (Miss. 1970).

Having found a state-created interest, the next inquiry is whether the procedures in place adequately protect that interest. As set forth in *Mathews v. Eldridge*, this balancing test requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This analysis is completely absent from the defendant's motion for summary judgement.

In *ODonnell*, the Fifth Circuit struck down a district court's injunction requiring a bail hearing within twenty-four hours. *ODonnell v. Harris Cnty.*, 892 F.3d 147, 160 (5th Cir. 2018). The district court imposed a sweeping injunction to reform Harris County's bail system, including a requirement that the county hold a bail hearing within twenty-four hours of arrest. *Id*. at 159-60. The Fifth Circuit believed that the "district court's 24-hour requirement [was] too strict under federal constitutional standards" citing the United States Supreme Court's decision in *County of Riverside v. McLaughlin* which "explicitly included bail hearings within [the forty-eight hour] deadline." *Id*. at 160 (citing *McLaughlin*, 500 U.S. at 58). The holding in *ODonnell* is clear, "[w]e conclude that the federal due process right entitled detainees to a [bail] hearing within 48 hours." *Id*.

Notably, following the completion of briefing on this matter, the Fifth Circuit issued its decision in *Daves v. Dallas County, Texas*, explicitly overruling *ODonnell* on the basis that the Court should have applied *Younger*[12] abstention principles and refrained from issuing a decision.

---

[12] *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

24

*Daves v. Dallas Cnty., Texas*, 64 F.4th 616, 631-32 (5th Cir. 2023). However, there is no such impediment in the present case and nothing in *Daves* suggests that anything about the analysis of the bail issue in *ODonnell* was incorrect in any respect other than abstention. As such, this court considers the reasoning put forth in *ODonnell*, while not precedential, compelling nonetheless.

Because the defendant failed to set forth evidence sufficient to conduct the proper Fourth and Fourteenth Amendment analyses, the court cannot determine whether the defendant is entitled to summary judgment. Accordingly, the defendant's motion with respect to the plaintiff's Fourth and Fourteenth Amendment claims that she was entitled to be taken immediately or without unreasonable delay before a judge is denied.

**b.** State Law Violations

The plaintiff argues "[t]he Mississippi Rules of Criminal Procedure, the Mississippi Constitution, and Mississippi statutes create a liberty interest in being immediately released from confinement or be taken before a judge to be heard on whether she should be released and to have counsel appointed." The plaintiff cites Mississippi Rule of Criminal Procedure 5(c)(2) which provides:

> If the person arrested cannot meet the conditions of release provided in the warrant, or if no such conditions are prescribed:
>
> > (A) if such person was arrested pursuant to a warrant issued on a charging affidavit, the accused shall be taken without unnecessary delay, and in no event later than forty-eight (48) hours after arrest, before a judge for an initial appearance.

M.R.Crim.P. 5(c)(2). She argues this rule is consistent with Mississippi Code Annotated § 99-3-17 which provides, "[e]very person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case, except as otherwise provided in Section 99-3-18."

The defendant responds that it is immune from state law claims under the Mississippi Tort Claims Act,[13] specifically citing § 11-46-9(1)(m), which provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim...
>
> (m) of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code. Ann. § 11-46-9(1)(m). Because it is dispositive, the court turns directly to the inmate exemption. The Mississippi Supreme Court has previously explained the exemption's expansive reach:

> In the Tort Claims Act, the Mississippi Legislature provided for an exemption from the government's liability for claims made by inmates. Unlike other states with similar statutes, no exceptions, restrictions or distinctions were made to allow an inmate to bring a claim against a governmental entity ... *The Legislature expressly stated the governmental entity would be immune from all liability from any claim of any claimant who was an inmate at the time the claim arose.* Therefore, by the express language of the statute, Wallace, as an inmate of the Department of Corrections, is barred from bringing any claim against the Town of Raleigh.

*Wallace v. Town of Raleigh*, 815 So.2d 1203, 1207-08 (Miss. 2002) (emphasis added); *see also Hinds Cnty. v. Burton*, 187 So.3d 1016, 1024 (Miss. 2016) (holding that a pretrial detainee is an in inmate for purposes of Miss. Code. Ann. § 11-46-9(1)(m)).

There is no dispute that the plaintiff was in custody at the time the alleged violation occurred. However, the plaintiff contends that because she was *illegally* detained, § 11-46-9(1)(m) is not applicable. In his concurring opinion in *Hinds County v. Burton*, Justice King cautioned against a broad interpretation of "inmate" under § 11-46-9(1)(m). *Burton*, 187 So. 3d at 1025 (King, J., concurring). The majority reasoned the plaintiff, who was in the process of

---

[13] The defendant plead the affirmative defense of immunity in its "Answer and Defenses of Lee County, Mississippi."

being booked, was a "claimant who at the time the claim ar[ose] [wa]s an inmate." *Id*. at 1024. Justice King reasoned that if the plaintiff "had proven that he was not lawfully arrested or detained, the label of 'inmate' would surely not be applicable." *Id*. at 1025 (King, J., concurring). He concluded that "[w]here the detention is improper and unlawful, there should be no immunity." *Id*.

The court finds that Justice King's reasoning should apply here. This court finds that the plaintiff was lawfully arrested, but the court has not yet decided whether the plaintiff was lawfully detained. If the plaintiff can prove she was not lawfully detained, it follows that the label of "inmate" would be inapplicable, and the defendant is not immune from liability under the Mississippi Tort Claims Act.

*Conclusion*

For all the reasons discussed above, the defendant's motion for summary judgment is granted in part and denied in part. Genuine issues of material fact exist as to whether the plaintiff was unlawfully detained— and consequently whether the inmate except applies—and to her condition of confinement claim regarding bedding. The motion is granted as to all other claims.

**SO ORDERED**, this the 5th day of May, 2023.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE